IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JEREMIAH PARKER, and | ) |
| | ) |
| EP, a minor, by and through | ) |
| his next friend, TIFFANEY WHITT, and | ) |
| | ) |
| NP, a minor, by and | ) |
| through his next friend, TIFFANEY WHITT, | ) |
| and | ) |
| | ) |
| ZP, a minor, by and | ) |
| through his next friend, TIFFANEY WHITT, | ) |
| and | ) |
| | ) |
| IP, a minor, by and through | ) |
| his next friend, TIFFANEY WHITT, and | ) |
| | ) |
| MP1, a minor, by and | ) |
| through his next friend, TIFFANEY WHITT, | ) |
| and | ) |
| | ) |
| MP2, a minor, by and through | ) |
| his next friend, TIFFANEY WHITT, | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:22-cv-454 |
| KEARNEY SCHOOL DISTRICT, and | ) |
| | ) |
| DURHAM SCHOOL SERVICES, L.P., | ) |
| | ) |
|     Defendants. | ) |

## COMPLAINT

1. Plaintiffs bring this suit to seek compensation and redress for harms they suffered as the result of racial harassment at the Kearney School District, in

violation of 42 U.S.C § 1983, the Fourteenth Amendments, Title VI of the Civil Rights Act of 1964, and 42 U.S.C. § 1981.

2. Plaintiffs bring this suit to seek compensation and redress for harms they suffered as the result of racial harassment and breach of contract by Defendant Durham School Services, L.P., in violation of 42 U.S.C. § 1981.

3. This court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §1331 and §1367.

## Parties

4. Plaintiffs were African-American students at Defendant Kearney School District.

5. Plaintiff Jeremiah Parker is now an adult; his siblings remain minors and bring their suit by and through Tiffaney Whitt, who is the mother and next friend of the minor plaintiffs.

6. Defendant Kearney School District ("District") operates Kearney High School, Kearney Junior High School, Kearney Middle School, and five elementary schools, and serves about 3,500 students. The District is a recipient of federal funds.

7. Defendant Durham School Services, L.P. ("Durham"), is a foreign limited partnership with a principal office address of Austin, TX, and a Missouri Registered Agent as follows:

CT Corporation System
120 South Central Avenue
Clayton, MO 63105

Durham operates busing services for the District.

8. Defendant District exists and is organized under the laws of the State

of Missouri.

## Background allegations

9. Plaintiffs possessed a property interest in their public education at the District, including transportation to and from the District's facilities and programs.

10. Plaintiffs possessed the right under the Fourth and Fourteenth Amendments to substantive due process rights, including the right to attend school and ride the bus and not be subjected to racial harassment.

11. Plaintiffs possessed a right under Title VI to have access to educational programs and facilities without experiencing race-based discrimination, harassment or retaliation.

12. Plaintiffs were third-party beneficiaries to the contract between Durham and the District to provide Plaintiffs busing to school.

13. Plaintiffs were third-party beneficiaries to the contract between the District and the United States of America to provide educational services free of race-based discrimination, harassment or retaliation in exchange for federal funds.

14. Plaintiffs and District formed a contract and/or implied contract to mutually abide by handbook and policy provisions committing to providing an educational environment free from racial harassment.

15. All of the Defendants' conduct was at least grossly negligent and therefore the Paul D. Coverdell Teacher Protection Act of 2001, 20 U.S.C § 6731 (2012) does not apply.

16. Plaintiffs at all relevant times attended Defendant District's schools, including the 2020-2021 school year, and during that time used and attempted to use Defendants' buses.

17. During those years, the Kearney High School served between 874 and 899 students, of which between 1-percent and 1.5-percent were African American. For each of those years, more than 92-percent of the student population was white.

18. A child in Missouri should be able to go to school without students racially harassing him – and both federal and state law require this.

19. Racial harassment at school interferes with a student's ability to learn and thrive at school.

20. In the two years immediately preceding Plaintiffs' attendance at Kearney schools, the few other African-American students also attending had been subjected to racial harassment at Defendant's schools, including the following:

   a. In junior high school, a student was called "nigger" in class; the incident was reported the conduct to a teacher and a principal. The Defendant's administration said it would be dealt with at a future date because the student had a football game and his dad was a coach.

   b. In junior high school, as a student walked across the stage to accept an award in front of a school assembly, several high school students began to yell the word "nigger" and other slurs. Defendant's administration witnessed the conduct.

c. In high school, a student was in class when a student told her, in front of the class: "Fuck You Nigger." The conduct was reported to Defendant's administration.

21. In the 2018-2019 school year, an African American student participated on the swim team, but was told by white swimmers he needed to shave his hair short and dye it blonde. The student's fellow swimmers also subjected him to racial comments in a bullying fashion, such as his teammate telling him to "swim nigger swim" during a swim competition. The conduct was reported to the Defendant.

22. A white Kearney High School student took a picture of an African American student and super-imposed the words "Fuck niggers" over the top of it. The incident was reported to school administrators.

23. In January of 2019, two white, male Kearney high school students began to send an African American student pictures of themselves posing with confederate flag during school hours, with messages such as "My nigga? You dig me" and "Heritage but mostly hate brotha…" The conduct to Defendant's administrators.

24. In February and March of 2019, an African American student continued to receive messages on Instagram that threatened him using racial slurs in the same vein as the January communications, but this time the racial harassment came from an anonymous account that only followed Plaintiff. Plaintiff's family reported the continued harassment to the Kearney High School counselor and principal, but were referred to the police. The racial harassment continued into April of 2019, including messages such as: "FUCK YOU, YOU COCKSUCKING NIGGER" and "THIS IS A WHITE TOWN NIGGA BOY."

25. In May of 2019, while an African-American student was meeting with an after-school school group devoted to racial issues, a white female student made racial comments, including the words "nigga" and the phrase "Can I get the nigga pass" on social media in response to a picture of the student. The comments were reported to the club's sponsoring teacher, who told the student to ignore the messages.

26. The next day, white female students continued to taunt the African-American student in racial terms, and then stated to him: "you won't doing nothing about it, yes I sent it and if you do anything I will have all the whites in Kearney beat your ass."

27. The conduct was reported to the principal, who responded to the student that he should ignore the white female student's conduct because she was poorer than him.

28. Subsequently, on the bus, a white male student began playing music with the word "nigger" in it, and then the student began repeating the word "nigger." The African American student asked him to stop, and the white male student began making monkey sounds.

29. During school the next day, the white male student continued to make monkey sounds around the African American during class. When asked to stop, the white male student, joined by several other white male students, all began making monkey sounds until he walked away.

30. The harassment continued on the bus and carried out into the school day were made know to Defendant's administrators.

31. The African-American student stopped taking the bus and would walk to school, but students on the bus would shout the word "nigger" at him as he walked, so his family began giving him rides to school.

32. In September of 2019, white students created and circulated a video directed at an African-American student in which they chanted the word "nigger."

33. The next day, several white students got into a physical altercation with an African-American student at school.

34. An African-American student received anonymous messages condemning him for the way a white student was treated, accusing him of pulling a "race card," telling him there were a total of two black people in Kearney, and that they were the "literal scum of the earth." The messages continued: "I hope I see your black ass in tree. Alabama wind chime style." The messages to the African-American student continued: "I hope you and your monkey family gets jumped by all the whites in Kearney."

35. Shortly thereafter, an African-American student's parents removed him from school for the rest of the semester.

36. White students at the Kearney School District, who were in all respects similarly situated to the Plaintiffs, were not subjected to a racially hostile environment at school, on the buses, and in the Defendant's programs.

37. In 2022, a teacher working for the Defendant School District made racial jokes about a student of color in front of his classroom.

38. Defendant Durham and the Defendant School District jointly operated buses to bring Plaintiff and other students to and from school.

39. Defendant Durham and Defendant School District entered into a contract for the provision of bus services to which Plaintiff was an intended third-party beneficiary.

40. Defendant School District's policies dictated that school buses were an extension of the school environment.

41. Defendant Durham and Defendant School District further required an agreement from Plaintiffs and his family for Plaintiffs to ride the bus, including policies, handbook provisions and other forms that created a quasi-contract and/or contract implied in law that bus services for the Plaintiffs would be safe and not a site for racial harassment.

42. Defendants failed to train their employees to effectively and promptly end racial harassment occurring in their schools and buses.

43. The Plaintiffs moved to Kearney as a family in April of 2020. Almost immediately, the family began to encounter racial harassment.

44. From approximately August of 202 through approximately April of 2021, the Plaintiffs were constantly harassed on Defendants' buses by students calling them "nigger," and asking questions like "Do you eat chicken and watermelon."

45. The driver overheard the racial harassment regularly and never did anything to stop it.

46. In March of 2021, a white student used the word "nigger" in Plaintiff MP1's Fifth Grade class. A teacher told Plaintiff's mother that it was because of the Negro Baseball Leagues were being discussed.

47. In April of 2021, the five older plaintiffs, Jeremiah, EP, NP, ZP, and IP. were called "nigger" on the bus by students, who threatened to fight, kill and hang the plaintiffs from trees.

48. The racial harassment and threats were reported to Defendants, but Defendants did not call Plaintiff's mother back, no follow-up occurred, and no students were reprimanded.

8

49. After the April 2021 incident, the oldest Plaintiff began to drive the plaintiffs to schools instead of using the bus when possible.

50. Two weeks later, still in April of 2021, an administrator with the Defendant School District contacted Plaintiffs' mother regarding her third-grade son, MP2, who was written up by Defendants for sticking his head in the aisle to be funny, even though another student had struck him on the same ride.

51. At the end of April of 2021, Plaintiff Jeremiah Parker was called "nigger" by white students at Kearney Junior High School while he was giving another plaintiff a ride because they could not use the bus due to the threats and racial harassment.

52. In May of 2021, Plaintiff NP was working on a junior high school group project that another student wrote the word "nigger" on. The Plaintiff walked out of the classroom. Defendant School District had actual knowledge of the event, but no action was taken.

53. In the following days, Plaintiff NP was being called "nigger" and a "snitch" during class, causing him to again walk out of the classroom. He was taken into the administrator's office so that he could "calm down." Plaintiff's mother discussed with the administrator the Defendant District's duty to intervene and follow the Code of Conduct.

54. A week later, Defendant's administrator contacted Plaintiff's mother and accused Plaintiff NP of sexual harassment. Administrators had pulled Plaintiff into a room as soon as he entered the school without explaining why. Plaintiff's mother went to the school to find out what was happening, and Defendant's Administrator said that a female student had accused her son of harassment, and that if he took Plaintiff's side in the matter, he would face backlash from the community.

55. A few days later, Defendant District's administrator contacted the Plaintiff's mother and said that her son would be suspended.

56. Plaintiff's mother, who is also a school administrator for another district, asked to see the video footage of the alleged sexual harassment.

57. That same day, Plaintiff NP received a death threat via Snapchat from a student referencing the sexual harassment allegation. *See* Exhibit A.

58. Plaintiff's mother contacted the Defendant's administrator regarding the conduct involving Plaintiff NP, but the administrator never responded.

59. A few days later, Plaintiff's mother reviewed the video footage with Defendant's administrators. The video demonstrated that the Plaintiff NP had engaged in no conduct that was reasonably construed as sexual harassment.

60. The same video showed Defendant's staff engaging in no corrective action among the students on the video.

61. Plaintiff's mother defended her son's conduct and objected to the suspension and informed the administrator that it was obviously retaliatory behavior for her son's report of racial harassment.

62. Defendant's administrator told her to lower her voice and threatened to call the police.

**Count I – Title VI of the Civil Rights Act of 1964: Racial Harassment**
**Asserted Against: Defendant School District**

63. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

64. The ongoing, continuing racial harassment Plaintiffs suffered at the Kearney school district created a hostile educational environment that denied them

educational opportunities, equal access to the Defendant's resources and opportunities, and adversely affected their educational experiences.

65. Plaintiffs, and plaintiffs' family members on their behalf, repeatedly reported the racial harassment to Defendant School District employees, including administrators and teachers who had the authority to end the harassment.

66. The Defendant School District had actual knowledge of the ongoing racial harassment of Plaintiffs and the ongoing racially hostile learning environment they faced at their schools and on their buses and in their programs.

67. Defendant had actual control over the harassers of the Plaintiffs.

68. Defendant School District failed to take prompt, effective remedial actions to stop the ongoing racially hostile learning environment.

69. The Defendant School District remained deliberately indifferent to the continuing racial harassment and racially hostile educational environment Plaintiffs suffered and continued to suffer.

70. The Defendant School District's administrators was clearly unreasonable in light of the known circumstances.

71. White students similarly situated in all relevant respects to Plaintiffs were not asked to endure ongoing racial harassment and a continuing racially hostile educational environment.

72. The few other African-American students were also chronically racially harassed at school and on the buses.

73. The harassment and hostile educational environment forced Plaintiffs to leave the school.

11

74. As a result of the harassment, Plaintiffs experienced emotional distress in the form of anxiety, fear and depression, and other manifestations; they were denied educational opportunities and transportation; and they incurred expenses.

75. Plaintiffs and plaintiffs' family incurred extra expenses to move and to send them to a different school.

76. The actions and conduct set forth herein were outrageous and showed discriminatory motive, reckless indifference, and/or conscious disregard for the rights of Plaintiff, and therefore Plaintiff is entitled to punitive damages from Defendant, to punish Defendant and to deter Defendant and others from like conduct.

77. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, and/or the actions were expressly authorized by Defendant and/or their actions were ratified by Defendant, thus making Defendant liable for said actions under the doctrine of respondent superior and/or ratification.

**Count II – Section 1981: Racial Harassment**
**Asserted Against: Defendant School District and Defendant Durham**

78. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

79. Plaintiffs are members of a racial minority.

80. Plaintiffs are the intended beneficiary of a contract between Defendants.

81. Plaintiffs are also the intended beneficiary of an implied or quasi-contract to between Defendants and Plaintiffs to provide Plaintiffs safe transportation not conditioned on experiencing racial harassment.

82. Plaintiffs suffered racial harassment and racially hostile educational environment on buses that were operated, controlled and/or owned by Defendants.

83. Plaintiffs were harassed because of their race.

84. The harassment and the racially hostile educational environment of Defendants' buses was objectively and subjectively severe and pervasive and deprived Plaintiffs of educational opportunities and was deprived the benefit of transportation unencumbered by pervasive, severe racial harassment.

85. Defendants condoned, ratified and refused to stop open racial harassment occurring on the buses on which Plaintiffs road to school.

86. As a result of the harassment, Plaintiffs experienced emotional distress in the form of anxiety, fear and depression, and other manifestations.

87. Plaintiffs and plaintiffs' family incurred extra expenses to move and to send him to a different school.

88. The actions and conduct set forth herein were outrageous and showed discriminatory motive, reckless indifference, and/or conscious disregard for the rights of Plaintiff, and therefore Plaintiff is entitled to punitive damages from Defendant, to punish Defendant and to deter Defendant and others from like conduct.

89. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants and were at all such times acting within the scope and course of their agency and employment, and/or the actions were expressly authorized by Defendants and/or their actions were ratified by Defendants, thus making Defendants liable for said actions under the doctrine of respondent superior and/or ratification.

WHEREFORE, Plaintiffs pray for judgment in their favor and against Defendants, for an award of actual, compensatory and punitive damages, for costs herein expended, attorneys' fees, and for such other relief as this Court deems just and proper.

**DEMAND FOR A JURY TRIAL**

Plaintiff demands a jury trial on all triable issues herein.

Respectfully Submitted,

/s/ Dan Curry
Dan Curry, MO #58264
Sarah A. Brown, MO #37513
Brown & Curry, LLC
1600 Genessee St., Suite 956
Kansas City, MO 64102
(816) 756-5458
(816) 666-9596 (FAX)
dan@brownandcurry.com
sarah@brownandcurry.com

ATTORNEYS FOR PLAINTIFF